KETHLEDGE, Circuit Judge,
concurring in part and dissenting in part.
I would allow Ryan’s equal-protection claim against Officer Schultz to proceed to trial. For Ryan to prevail on that claim, she needed' to prove two things: first, that Schultz took some action that was “adverse” to Katie’s interests; and second, that he acted with “discriminatory intent.” *285 Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000). To establish discriminatory intent, Ryan needed to show that Schultz intended either to hurt Katie because she was a member of an identifiable group or to benefit Ed because he was a member of one. Bray v. Alexandria Women’s Health Clinic, 506 U.S. 263, 269-70, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (intent to harm women); Miller v. Johnson, 515 U.S. 900, 924-25, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (intent to benefit African Americans).
A reasonable jury could find that Ryan met that burden. Schultz’s failure to arrest Ed harmed Katie because, if Schultz had put Ed in jail on September 20, then Ed likely still would have been detained on September 22, which is when he murdered her. And a jury could easily find that the reason Schultz chose not to arrest Ed was that Ed was a fellow police officer. Per Canton Police Department policy, Schultz was required to arrest domestic assailants “whenever possible.” R. 106-7 at PagelD 2164. And Schultz himself conceded that he had probable cause to believe that Ed had assaulted Katie.
Schultz responds that he let Ed go free because, Schultz says, he was worried about Ed hurting himself. And Schultz says that he later mistakenly assumed that Officer Falk would find and arrest Ed. But both responses are pure jury argument. Nor are they particularly strong ones. If Schultz’s goal was to prevent Ed from hurting himself, then taking him into custody was probably the surest way to do that. And though Schultz now claims that he thought Falk was taking over the investigation, Schultz himself told the Detroit Police that his department did not plan to investigate Ed’s assault on Katie. Thus, a jury could decide that, but for Ed being a police officer, Schultz would have arrested him.
That Ryan has evidence enough to prove causation should render irrelevant the fortuity of whether Schultz happened to let other domestic-violence suspects go free as well. In cases like this one, the “similarly situated” requirement serves as a proxy for proving that the defendant’s discriminatory intent was a but-for cause of the plaintiff’s harm. See Gutzwiller v. Fenik, 860 F.2d 1317, 1325-26 (6th Cir. 1988); Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001). Ryan has ample proof of that here. Nor do I think that the Supreme Court’s decision in Pers. Adm’r of Mass. v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), requires us to affirm the district court’s judgment. I read Fee-ney simply to mean that, to violate the Equal Protection Clause, governmental action must be taken “because of’ its effect on an identifiable group—not that the intended effect must always be adverse. Id. at 279, 99 S.Ct. 2282. Indeed, later cases clarify that, if the government takes an action intended to benefit a group, the action is subject to the same level of constitutional scrutiny that would apply if the action burdened the group. See Miller, 515 U.S. at 924-25, 115 S.Ct. 2475; Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 218-22, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).
I therefore respectfully dissent from Section II.B of the majority opinion, which affirms the district court’s grant of summary judgment to Schultz. Otherwise, I concur in the majority’s well-reasoned opinion.